UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DONALD LEE BROOKS,

                     Petitioner,

v.                                      Civil Action No. 3:15-CV-13

HAROLD W. CLARKE,

                     Respondent.

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on a Writ of Habeas Corpus for Prisoner in State Custody ("Petition") (ECF No. 1) filed by Petitioner Donald Lee Brooks ("Brooks" or "Petitioner") and a Motion to Dismiss (ECF No. 5) filed by Respondent Harold W. Clarke ("Clarke" or "Respondent"), Director of the Virginia Department of Corrections. In the Petition, Brooks challenges his convictions for second degree murder and the use of a firearm in the commission of that murder. After being convicted, Brooks was sentenced to 25 years on the murder conviction and 3 consecutive years on the firearm offense. For the reasons that follow, the Court DENIES the Petition and GRANTS the Motion to Dismiss.

I.    **BACKGROUND**

    a.   ***Factual History**_

On April 12, 2010, Brooks, Gerald Hall ("Hall") and Tony Robinson ("Robinson") were at a bar named "B&N Grill," drinking beer and playing pool. Hall and Brooks were regular customers who came in about two or three times a week. Robinson did not previously know either of the two other men. After some time, the men got loud fussing at each other, and the bar owner, Betty Newton ("Newton"), asked the men to go outside. At trial, Newton claimed that Brooks shoved Hall to the ground as the men walked outside. Testifying for the prosecution, Robinson stated that he went outside a few moments after Hall and Brooks left the bar, and saw

the two men just standing there. According to Robinson, Brooks then walked to his truck, pulled out a gun, and walked toward Hall while firing his gun. The prosecution alleged that Hall was shot in the back.

However, Brooks testified to the contrary that upon exiting the bar, Hall and Robinson took him to the ground, and his hat and glasses were knocked off. When knocked down, Brooks allegedly landed on his back and suffered a large gash in his head, which required stitches. Brooks further testified that Hall was straddling him, basically sitting on Brooks' stomach and holding down one arm, while Robinson held down Brooks' other arm. Brooks then alleged that Hall started beating him in the face. When Brooks asked Hall why he was doing this, Hall responded, "I'm going to kill your old MF ass." Brooks testified that at that moment, he "snapped," managed to get his arm free, pulled his gun "from the back of [his] britches," and started shooting.

After the shooting, Brooks went to his truck, called 911 and advised the dispatcher that he thought he shot two people. According to Deputy White's testimony, when he arrived on scene he first noticed that Brooks had a lot of blood on his face. The first thing Brooks told the Deputy was that "they beat me up," and "I'm an old man, and that's why I shot them."

According to the state's medical examiner, Dr. Gormley, Hall died about three weeks after the shooting from infection, essentially caused by two gunshot wounds.

    b. ***Procedural History***

        i. **Conviction and Direct Appeal**

Brooks was charged with murder and the use of a firearm in the commission of that murder. He pled not guilty to each charge. A jury trial was held before the Honorable Thomas V. Warren on September 1-2, 2010. Keith N. Hurley ("Hurley") represented Brooks at trial. The jury was instructed on first degree murder, second degree murder, manslaughter based on the heat of passion, and self-defense. The jury found Brooks guilty of second degree murder and use of a firearm in the commission of murder and recommended 25 years for second degree murder

and 3 years for use of a firearm. The Court accepted the jury's recommended sentences. The trial court entered final judgment on September 9, 2010, and Brooks subsequently appealed his convictions to the Court of Appeals of Virginia. A single judge refused the petition on March 22, 2011, and a three-judge panel likewise refused the petition on May 17, 2011. The Virginia Supreme Court thereafter refused Brooks' petition for appeal by order dated October 24, 2011.

ii. **State and Federal Habeas Petitions**

After the Virginia Supreme Court's refusal to hear Brooks' petition, he filed a habeas corpus petition in the Amelia County Circuit Court. In that petition, Brooks raised all of the allegations that he raises in the present Petition, which are outlined below. The circuit court issued a letter opinion on September 21, 2013, in which it rejected Brooks' various ineffective assistance of counsel claims. The circuit court dismissed the petition on February 21, 2014. The Supreme Court of Virginia then denied the petition for appeal from the habeas dismissal order on October 10, 2014.

On January 7, 2015, Brooks filed the instant Petition in this Court raising the same four primary claims:

- Claim A: Petitioner was denied his right to effective assistance of counsel when (1) counsel failed to present and argue any evidence of the trajectory of the bullets that allegedly supported the defense theory of the case and in particular Petitioner's testimony; (2) counsel failed to properly cross-examine the state's chief medical examiner regarding the entry and exit wounds, trajectory of the bullets, and inaccuracies of his diagrams, and failed to object to the admission of the autopsy report; and (3) counsel failed to present evidence and argue during closing argument that the bullet wounds and trajectory of the bullets support Petitioner's theory of self-defense, or at worst, manslaughter. (*See* Pet. at 13–14.)

- Claim B: Petitioner was denied his right to effective assistance of counsel when counsel failed to present evidence of certain bruising on Petitioner as well as the bent rings on Petitioner's left hand allegedly caused by Robinson putting his knee on Petitioner's hand. (*See id.* at 27.)

- Claim C: Petitioner was denied his right to effective assistance of counsel when counsel failed to fully cross-examine Robinson. (*See id.* at 30.)

- Claim D: Petitioner was denied his right to effective assistance of counsel as a result of counsel's errors in Claims A through C. (*See id.* at 35.)

On February 18, 2015, Clarke filed a response to the Petition and the Motion to Dismiss (ECF Nos. 5, 6). Brooks subsequently filed a reply to the Motion to Dismiss on March 23, 2015 (ECF No. 8). This matter is now ripe for review.

II. **LEGAL STANDARDS**

    a. *The AEDPA*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may review a petition for a writ of habeas corpus by a person serving a sentence imposed by a state court only on grounds that the person is being held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal court may grant the petition on a claim decided on its merits by the state court only if that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A decision is "contrary to" federal law if it resolves a question of law in a way that contradicts the relevant Supreme Court precedent, or if it yields a result that differs from the outcome of a Supreme Court case involving "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision applies federal law unreasonably if it is based on the correct legal principle but applies that principle unreasonably to the facts of a case. *Id.* at 413. Whether a decision is reasonable is determined by an objective, not subjective, test. *Id.* at 409–10. The question is not "whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). Finally, a federal court is to presume the correctness of the state court's finding of facts and not find an "unreasonable determination" of the facts, unless the petitioner rebuts the presumption by clear and convincing evidence. *Id.* at 473–74. Thus, under section 2254(d), if a state court

4

applies the correct legal rule to the facts of a case in a reasonable way, or makes factual findings reasonably based on the evidence presented, a federal court does not have the power to grant a writ of habeas corpus, even if the federal court would have applied the rule differently. *Williams*, 529 U.S. at 406–08.

### b. *Motion to Dismiss*

The familiar standards of Federal Rule of Civil Procedure 12(b)(6) apply to a government's motion to dismiss a section 2254 petition. *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009). A motion to dismiss therefore "tests the legal sufficiency of the petition, requiring the federal habeas court to assume all facts pleaded by the § 2254 petitioner to be true." *Id.* at 139 (internal quotation marks omitted) (quoting *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009)). The court must consider "the face of the petition and any attached exhibits" in determining whether a section 2254 petition states a claim for relief. *Id.* (quoting *Wolfe*, 565 F.3d at 169).

To survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009). A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the alleged violations occurred. *See Twombly*, 550 U.S. at 556; *see also Iqbal*, 556 U.S. at 678.

### III. DISCUSSION[1]

As an initial matter, Brooks' Petition before this Court is virtually identical to his petition for habeas relief before the Amelia Circuit Court. He presents the same four grounds for relief.

---

[1] Brooks contends, and Clarke does not dispute, that the Petition's claims have been exhausted and that the Petition was timely filed. *See* 28 U.S.C. §§ 2244(d), 2254(b)(1)(A).

For this reason alone, Brooks has not shown that the state court made an unreasonable determination of facts. Pursuant to 28 U.S.C. § 2254, this Court must presume the correctness of the state court's factual findings. *See* 28 U.S.C. § 2254(e)(1); *Schriro*, 550 U.S. at 473–74. A petitioner can only rebut this presumption of correctness with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). However, there are no facts, evidence, or argument in the record that differ from those before the Amelia Circuit Court in resolving the Petition. Accordingly, Brooks has not presented clear and convincing evidence that the Amelia Circuit Court's denial of habeas relief involved an unreasonable determination of facts.

Moreover, Brooks has failed to prove an unreasonable application of clearly established federal law. Because each of Brooks' four claims focuses on ineffective assistance of counsel, the Court will first outline the standard governing such claims.

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of *Strickland*, the performance prong, requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The second prong of *Strickland*, the prejudice prong, requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* at 694. If it is clear the petitioner has failed to satisfy either prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other. *Id.* at 697.

### a. *Claim A: Ineffective Assistance of Counsel Regarding Trajectory of Bullets*

As to his first ground for relief, Brooks contends that he was denied the effective assistance of counsel in violation of the Constitution for his trial counsel's failure to (1) present and argue any evidence of the trajectory of the bullets that supposedly supported the defense theory of the case; (2) properly cross-examine the state's chief medical examiner, Dr. Gormley; and (3) present evidence and argue during closing argument that the bullet wounds and trajectory of the bullets fully support Petitioner's claims of self-defense, or at worst, manslaughter. (Pet. at 13–14.) Specifically, Brooks argues that this evidence "proved that the trajectories of the two shots to the body indicated a steep upward angle, traveling left to right of his body, and those entry and exit wounds on Hall's body are consistent with his being shot while the Petitioner was laying on the ground on his back." (Pet. at 14.) Brooks contends that this evidence "was the most important fact in the entire case; yet the jury heard none of it and was told almost the opposite: that Hall was shot in the back as the Petitioner walked toward him firing his gun." (*Id.*)

Brooks submits that the main issue in the case was whether he acted in self-defense or under the heat of passion. If he was, as he alleges, flat on his back, being held down and beaten, and therefore had a reasonable fear of serious bodily injury or death, then he was authorized to use deadly force in self-defense. On the other hand, if the jury believed that Brooks was beaten but went too far in repelling the attack, the jury could still find that heat of passion was present, and would have reduced the charge to manslaughter.

After briefing and oral argument, the Amelia Circuit Court in its letter opinion dated September 21, 2013 stated,

> I agree with petitioner that his trial counsel's performance regarding the trajectory of the bullets was deficient. There should have [sic] more thorough cross-examination of Dr. Gormley, there should have been more argument regarding the trajectory of the bullets, and there should been expert testimony for the defense. Even if I assume that the "deficient performance" prong of <u>Strickland</u> has been met, however, I must still consider the "prejudice" prong. From petitioner's point of view, the problem regarding the "prejudice" prong is that the statements that petitioner made to White and Eells clearly indicate that petitioner went back to his truck, got his gun, and shot Hall, as opposed to shooting Hall while he and Hall were fighting on the ground.

(Cir. Ct. Letter Op. of Sept. 21, 2013, at 3.) The trial transcripts amply confirm that the Amelia Circuit Court reasonably reached this conclusion through the proper application of the *Strickland* standard.

Starting with *Strickland*'s latter prong, *see Strickland*, 466 U.S. at 697 (holding that either prong can be addressed first), the overwhelming inculpatory evidence demonstrates that Smith was not prejudiced by his counsel's alleged deficient performance. First, Rondell White ("White"), deputy sheriff for Amelia County, testified that when he arrived at the scene on the night in question, Brooks told him, "I'm an old man, and that's why I shot them. [Brooks] told [White] that there was a black man, that he had shot the ring off." (Tr. Sept. 1, 2010, at 107:3–5.) Brooks further admitted that he had gone to his truck, got his gun, and "began shooting." (*Id.* at 108:1–2.) Brooks was "going to kill him [Hall], and the only reason why [he] didn't was because [Hall] begged [him] not to." (*Id.* at 108:3–4.)

John Eells ("Eells"), deputy with the Amelia County Sheriff's Office, mirrored White's testimony. After Eells brought Brooks to the Piedmont Regional Jail, (*id.* at 145:11–13), Brooks told Eells that he had asked Hall to stop attacking him because he was "an old man," (*id.* at 146:11–13). Brooks admitted that "once the attack had stopped, he went over to his vehicle and retrieved his pistol and went back over to Mr. Hall and started firing at him, emptied the weapon at Mr. Hall." (*Id.* at 146:13–16.) Then Brooks returned to his vehicle, and "reloaded the weapon with the intent of quote, finishing him, Gerald Hall, but [Brooks] said that he did not shoot again because Gerald Hall was on the ground saying, please don't shoot me, Don." (*Id.* at

8

146:17–21.)

Robinson also testified at trial, stating that when he left the bar and proceeded to his car, he "heard Brooks or somebody said [sic], I'll be right back." (*Id.* at 201:1–2.) Robinson turned around and saw Brooks headed towards his truck. (*Id.* at 201:2–3.) Brooks then pulled a gun from his truck, and starting firing it at Hall. (*See id.* at 201:7–11;14–16.)

Brooks, to the contrary, testified that he had his gun in his back pants pocket the entire night. (*Id.* at 259:24–25.) He testified that he never went back to his truck to get the gun because he "didn't have to." (*Id.* at 260:7–9.)

In light of the weight of the witness testimony undermining Brooks' account, the state court was not unreasonable in concluding that Brooks was not prejudiced by his counsel's alleged deficient performance. Rather, to the contrary, the deputy sheriffs' testimony regarding Brooks' statements made on the night in question clearly show that Brooks went to his truck to retrieve his pistol and then returned to Hall with the intent of "finishing him." (*Id.* at 146:18.) Brooks' own statements established his plain guilt on the charge of second degree murder, and contradicted any notion of self-defense.

In Virginia, "[k]illing in self-defense may be either justifiable or excusable homicide. Justifiable homicide in self-defense occurs where a person, *without any fault on his part in provoking or bringing on the difficulty*, kills another under reasonable apprehension of death or greatly bodily harm to himself." *Avent v. Commonwealth*, 688 S.E.2d 244, 199 (Va. 2010) (citation omitted). Excusable homicide, on the other hand, "occurs where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *Gilbert v. Commonwealth*, 506 S.E.2d 543, 546 (Va. Ct. App. 1998) (citation and internal quotation marks omitted). Here, Brooks would not qualify for either justifiable or excusable homicide. With regards to justifiable, Newton testified that Brooks told Hall two times that he

9

was going to "kick [his] ass." (Tr. Sept. 1, 2010, at 184:11, 20–23.) Then after Newton told the men to "take it outside," she saw Brooks shove Hall to the ground. (*Id.* at 185:1, 3.) Secondly, with respect to excusable homicide, witness testimony confirmed that Brooks' actions could not constitute any sort of retreat–rather Brooks' "retreat" was only to go back to his truck and reload his gun before returning to Hall with the intent of finishing him off. (*Id.* at 146:17–21.)

The Respondent notes that "[o]nly if the jury had credited petitioner's self-serving trial testimony rather than his numerous inculpatory statements to the deputy sheriffs . . . would the trajectory of the bullets have potentially mattered." (Mem. in Supp. of Mot. to Dismiss at 23.) Based on the trial testimony, the Court agrees with Respondent that "[t]here is nothing remotely approaching a reasonable probability of the jury so crediting the petitioner's trial testimony." (*Id.*) Because the Petitioner has made an insufficient showing on the prejudice prong, this Court need not address the performance prong. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one."). Therefore, regardless of whether Brooks' trial counsel should have more thoroughly cross-examined Dr. Gormley, Brooks' habeas petition would still not pass muster under *Strickland*'s prejudice prong. Therefore, Brooks' first ground for relief is denied.

    **b.** ***Claim B: Ineffective Assistance of Counsel Regarding Bruising, Location of the Gun & Bent Rings***

In his second claim for relief, Brooks argues that his counsel was ineffective by failing to present evidence of (1) "the bruising on Petitioner's lower backside, around the waistline, from where the gun was located while the Petition was on his back and being beaten by Hall," and (2) "the bent rings on [Petitioner's] left hand from where Robinson held down his arm by putting his knee on the Petitioner's hand, causing the bent rings." (Pet. at 27.) Brooks argues that the main difference between the prosecution's theory and the defense's theory was whether Brooks retrieved his gun from his truck or fired his gun while being beaten. He argues that his gun was

in his waistband while he was lying flat on his back, being held down, and beaten. However, counsel failed to present evidence of the bruising that resulted from the gun. Additionally, Brooks contends that he was wearing two rings at the time he was assaulted, and those rings were bent as a result of being held down to the ground. Again, this evidence was available but not presented at trial. Brooks argues that this evidence provides "compelling support" for the jury to accept that Brooks was being held down and beaten at the same time that he had his gun tucked in his waistband.

The Amelia Circuit Court found that Brooks' argument did not "rise to a level sufficient to meet the 'deficient performance' prong of Strickland, and even if they did, the inculpatory evidence described previously was so strong that the 'prejudice' prong of Strickland has not been met." (Cir. Ct. Letter Op., Sept. 21, 2013, at 4.)

With regards to the bruising, the trial court record indicates that no medical records existed regarding a bruise to Brooks' lower back. (Tr. Sept. 1, 2010, at 280:7–11.) Brooks' trial counsel, Hurley, confirms this lack of evidence in his affidavit. (*See* Mem. in Supp. of Mot. to Dismiss Ex. 1, at 2.) And, although Brooks claimed on direct examination that he suffered bruising as a result of carrying a gun on his person during the fight with Hall, (*id.* at 260:9–11), he did not mention any such injuries on cross-examination, (*see id.* at 280:7–282:15). Thus, Hurley did not exhibit deficient performance by failing to put on non-existent evidence, and likewise, for all of the reasons identified above, Brooks was not prejudiced by Hurley's performance.

Secondly, in his affidavit Hurley asserts that he has no notes of Brooks advising him of the bent rings, nor could he have offered any evidence of how the rings were bent other than Brooks' own testimony. (Mem. in Supp. of Mot. Ex. 1, at 2.) As Hurley contends, "[a]t best, the bent rings may have shown Robinson was involved in the assault, but that evidence would not have discredited Brooks' statement to the police the night of the incident." (*Id.*) Thus, this claim must also fail for the reasons previously described.

### c. *Claim C: Ineffective Assistance of Counsel Regarding Cross-Examination of Robinson*

In his third claim, Brooks argues that he was denied effective assistance of counsel when counsel failed to fully cross-examine Robinson regarding: "(1) Robinson's prior inconsistent statements as listed herein; (2) the evidence that Robinson claimed Hall was shot by Petitioner while both were standing and that the Petitioner never stood over and shot Hall; (3) Robinson carried a baton or small club in his car and could access this baton by opening the driver's door of his vehicle; (4) Robinson participated in the beating of the Petitioner; and, (5) Robinson's claim that the Petitioner's injuries probably were self-inflicted while Petitioner waited for police to arrive." (Pet. at 30.) Brooks argues that each of Robinson's previous statements were different from his trial testimony. He argues that a proper cross-examination of Robinson would have revealed "the key factor in the case: the Petitioner's intent." (Pet. at 34.) Respondent counters that "the present allegation merely 'consistute[s] a grading of the quality of counsel's' performance on this matter." (Mem. in Supp. of Mot. at 30) (citing *Hunt v. Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995)). The Amelia Circuit Court again found this argument unavailing. (*See* Cir. Ct. Letter Op., Sept. 21, 2013 at 4.)

A review of the trial transcript illustrates that counsel cross-examined Robinson on the following issues: (1) whether he has been convicted of a felony or a misdemeanor involving lying, cheating, or stealing (Tr. Sept. 1, 2010, at 205); (2) whether he told Helen Borges, Petitioner's investigator, that there had been no fighting inside the bar on the night in question (*id.* at 206); and (3) whether Robinson saw "any problems" between Brooks and Hall as they walked out of the bar (*id.* at 207:16–21). In his affidavit, Hurley states that he "did not believe Mr. Robinson would be helpful to Mr. Brooks' case." (Mem. in Supp. of Mot. to Dismiss Ex. 1, at 2.) Rather, Hurley believed "Robinson was dangerous to Mr. Brooks, unpredictable." (*Id.*) "[A]fter he appeared to be an unbelievable witness, [Hurley] kept his questioning to a minimum." (*Id.* at 3.) Hurley did not believe it would benefit Brooks for Robinson to explain

12

"how Brooks received a laceration to his forehead or whether that injury would have been caused by Robinson's baton." (*Id.*)

Hurley's decision about the scope of his cross-examination of Robinson was a tactical decision reasonably made during the course of trial. Hurley was "concerned" about Robinson's potential answers and accordingly "kept [his] questioning to a minimum." (*Id.*) It is not appropriate to now question Hurley's tactical judgments. *See Bunch*, 949 F.2d at 1363; *Tice v. Johnson*, 647 F.3d 87, 105 (4th Cir. 2011) (quoting *Griffin v. Warden, Md. Corr. Adj. Ctr.*, 970 F.2d 1355, 1358 (4th Cir. 1992)). Moreover, even if Hurley had cross-examined Robinson on the issues raised in the present Petition, Brooks still does not make a showing that the result of the proceeding would have been different. Therefore, Petitioner's third claim fails under the *Strickland* standard.

### d. Claim D: Ineffective Assistance of Counsel as a Result of Any and All of Counsel's Errors in Claims A Through C

In his final claim for relief, Petitioner argues that he was denied his right to effective assistance of counsel as a result of the aggregate prejudice of counsel's errors in Claims A through C. For all the reasons stated above, Petitioner's Claims A through C do not warrant federal habeas relief and therefore this allegation must also necessarily fail. Accordingly, Petitioner's claim regarding aggregate deficiencies in his trial counsel's performance is likewise denied.

### e. Request for an Evidentiary Hearing on Claims B & C

Plaintiff argues that the state court unreasonably denied an evidentiary hearing on Claims B and C. He asserts that an evidentiary hearing is necessary to resolve factual disputes and to provide him with the opportunity to prove the stated grounds for habeas relief.

The decision to grant an evidentiary hearing is left to the "sound discretion of district courts." *Schriro*, 550 U.S. at 473. A federal court must consider whether the evidentiary hearing would provide the petitioner the opportunity to "prove the petition's factual allegations, which,

if true, would entitle the applicant to federal habeas relief." *Id.* at 474; *see Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000). The court must also consider the standards prescribed by section 2254 when considering whether an evidentiary hearing is appropriate. *Schriro*, 550 U.S. at 474. Based on a thorough evaluation of the state court record, the Court finds habeas relief under § 2254 is precluded, and thus the request for an evidentiary hearing is denied.

## IV. CERTIFICATE OF APPEALABILITY

A district court that enters a final order denying a § 2254 motion must grant or deny a certificate of appealability. Rules Governing Section 2254 Proceedings 11. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Brooks is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES the Petition, DENIES a certificate of appealability, and GRANTS the Motion to Dismiss.

Let the Clerk send a copy of this Memorandum Opinion to Petitioner and all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this \_\_16th\_\_\_\_ day of April 2015.